# CASES ADJUDGED

# COURT OF ERRORS AND APPEALS

## OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### NOVEMBER TERM, 1877.

---

JOHN H. DOUGHTY, appellant,

and

ADELIA DOUGHTY, respondent.

1. A decree in a divorce suit will have no extraterritorial effect when the defendant is domiciled in another state, and is not served with process, nor with notice of the proceedings.

2. A decree for divorce, to be entitled to extraterritorial effect, when the person of the defendant is without the jurisdiction, must be obtained in a manner consistent with natural justice, and such decree is enforced in another state only on the ground of comity.

3. Although a notice served on the defendant, when he is without the jurisdiction, cannot add anything to the right of judicial cognizance, nevertheless such circumstance may be a controlling one when the appeal is to the comity of another state.

4. When a party sets up that a ceremony of marriage was performed, but that he expressly refused to assent to the ceremony and marriage, no ground is laid to found a jurisdiction on the basis of *status*, and unless, in such case, process within the jurisdiction is actually served, or a vol-

untary appearance entered, the judgment will have no extraterritorial effect.

5. Also, *held*, that the judgment in this case was obtained by fraud, and was, consequently, void:

On appeal from a decree of the vice-chancellor, reported in *Doughty* v. *Doughty*, 12 *C. E. Gr.* 315.

*Messrs. Davis* and *B. Williamson*, for the appellant.

*Messrs. Clark* and *Cortlandt Parker*, for respondent.

THE CHIEF JUSTICE.

This is a bill for divorce, exhibited by a wife against her husband. The grounds laid are, desertion and adultery. In order to prepare the way for such a decree, the complainant asks that a judgment, rendered by the circuit court of Whiteside county, Illinois, in a suit by her husband, the appellant, against her, declaring her marriage with him to be null and void, shall be avoided by a decree. Whether this judgment has a legal existence or not, is the only contested question in this case; for, on the assumption of its invalidity, it is not denied that the appellant has been guilty of the statutory offence of desertion, and, also, of a breach of his marriage vows.

The judgment thus put in question is assailed on two grounds: First, because the court in Illinois did not acquire jurisdiction over the cause which it adjudicated; and, second, because the cause was brought within the jurisdiction of such court, if such jurisdiction existed, by deceit and fraud.

First, then, with respect to the former of these grounds. On the 8th of August, 1866, these parties were married in this state. A little over a month after the marriage, the husband departed from this state and went to Illinois, where he has since continually resided. The wife has always resided, and still resides, in this state. From the day of her

marriage to the present time there has been no intercourse or communication between this respondent and her husband. In this condition of affairs, in the month of November, 1868, the appellant commenced the suit in question, to dissolve his marriage, in one of the circuit courts of Illinois. The respondent was never within that jurisdiction; she was not served with process, nor was any notice of the pendency of the proceedings given to her, although her residence was well known to the appellant. The record now present shows that the clerk of the court caused a notice of the pendency of the suit to be published four times in three weeks in a newspaper of the county in which the court held its sittings. The respondent not appearing, either in person or by attorney, judgment was rendered, on the 13th of October, 1869, declaring the marriage ceremony between these parties null and void for fraud and duress, and want of consent by the husband to the celebration of the marriage.

On the argument, the case being treated as an ordinary suit for divorce, it was insisted, on the part of the appellant, that this adjudication by the court in Illinois was conclusive in this state, inasmuch as such court acquired jurisdiction from the fact that the domicile of the appellant, who was the plaintiff in that proceeding, was in that state at the time of the inception of the proceedings. It was not attempted to be denied that a judgment, *inter partes*, settling ordinary rights, which should be obtained by the methods made use of in this case, would be possessed of no efficacy beyond the territorial limits of the state by the tribunal of which it should be so rendered. That a judgment of such a character would, by the principles of international and of interstate law, be treated as an absolute nullity in a foreign jurisdiction, is a doctrine which is now too completely settled to admit of a moment's discussion. The rule thus established is in nowise a technical one, being founded in the universal concession that it is an element essential to the justice of all juridical action, that all the persons whose rights are to be adjudged should have an opportunity of being heard. The

argument, therefore, which asserts the validity of the present judgment before this court, must go the length of satisfying our minds that, in suits for divorce, this principle, so sacredly preserved in all other cases, does not prevail in this case. It is obvious that the sacrifice is a great one, and that it should not be made, except, if at all, on the ground that an interest higher than the duty of dispensing justice to the contesting parties, is at stake.

The appellant was a domiciled citizen of the state of Illinois, and this circumstance gave, beyond all question, the courts of that state jurisdiction over a suit instituted there by him for a divorce, in pursuance of the statutes established in such state. A judgment obtained in such a proceeding, authorized by the local authority, would, incontestably, have a local force. Each government has the undoubted right to regulate the formation and dissolution of the marriage contract so far as such contract affects its own citizens. It can, at will, dissolve a marriage by an act of legislation, unless prevented by a constitutional restraint; and it can ordain that either party may dissolve the relationship at will, in any method that it may see fit to prescribe. A statute which should enact that either party to a marriage might file a petition in a court, claiming a dissolution of the matrimonial bond on the ground of incompatibility of temper, or even on the ground of the desire of the petitioner to be divorced, and that thereupon a decree, as asked for, should be made, would be a valid proceeding in the place where it occurred, even though the other party was a non-resident, and was not served with process, and did not cause his appearance to be entered. Such proceeding would be legal, if not justifiable in right reason, inasmuch as marriage is not only a contract between the parties, but is, also, a relationship in which the government is interested. Marriage creates a status in which society is deeply concerned, and which, therefore, in all civilized countries, is deemed subject to the control of the civil

Doughty v. Doughty.

authority. To this extent the subject is clear of all difficulty or embarrassment.

But we enter at once upon debatable ground when we attempt to carry such local determinations as these just indicated into foreign states or countries, and call upon the courts of such places to enforce them. In such a situation, the conditions of the question are entirely changed. The consideration that a government has the right to regulate, as to its own citizens, the matrimonial relationship, has now lost the greater part of its force; and it is met by the countervailing principle, that such government has no just claim to a right to impose its policy beyond the limits of its own territory. This embarrassment reaches its acme when the parties to the marriage have their domiciles in different states. In such a position of things, it is not difficult to declare that a proceeding for divorce, carried on in the state wherein is the domicile of one of the parties, shall operate so as to change the status of such party within the territory of such state; but it is difficult to find any principle for declaring that such proceeding shall have the effect of changing the status of the other party in the state wherein he is domiciled. In suits of this character, the doctrine that gives jurisdiction from the mere fact of the domicile of one of the parties, must inevitably lead to the imposition of the policy of one state, with respect to marriage, upon the other state in which the other party to the marriage has his residence.

In the present case, it is claimed that the judgment in the court of Illinois had the effect not only of changing the status of the appellant in that state, and thus, in that respect, enforcing the policy of the laws of that locality, but the further effect of changing the status of the respondent in this state, her citizenship here being undisputed. The right of the foreign court to adjudicate with respect to the status of its own domiciled citizen is undisputed; but I have failed to see how its right to decide the status of a citizen of this state, by such adjudication, is to be conceded.

Doughty v. Doughty.

It seems to me, that a judgment can carry with it, *per se*, no extraterritorial force when the jurisdiction in the case rests alone on the fact that the complainant has his domicile within such jurisdiction. All the claim which such an adjudication has to foreign recognition, in my opinion, rests on the ground of comity. It is not a judgment such as is entitled to recognition and enforcement in other states by force of the act of congress and the constitution of the United States. In my opinion, it is only judgments that ensue from jurisdiction, regularly obtained over the parties by service of process upon them, or by voluntary appearance, or when the proceeding is strictly *in rem*, that carry with them these high sanctions, and which, therefore, are everywhere conclusive. Jurisdiction in divorce suits arising out of the status and domicile of one of the parties, cannot impart to a judgment any such efficiency. Nevertheless, as marriage is a matter of universal recognition and interest among all civilized people, a judgment of divorce, resting even on such a contracted foundation as the domicile of one of the parties alone, bears with it, into other jurisdictions, a title to respect, and, in some cases, a claim to voluntary adoption. In such instances, I regard the question whether the judgment shall be extraterritorially enforced to be one resting entirely on the consideration that, in a matter of universal interest of this nature, an obligation rests upon every government to carry into effect, as far as is reasonably practicable, and as may be consistent with its own policy, all foreign judgments. But an appeal of this kind to interstate comity should, I think, never prevail when the judgment sought to be accredited has been rendered in violation of that fundamental axiom of justice, before referred to, that the parties, before their rights are adjudged, shall have an opportunity of being heard. A judgment of divorce proceeding from a jurisdiction founded on domicile, would not contravene essential rules of natural justice if actual notice to appear had been served on the defendant residing abroad. It is true, that a notice so

served on a litigant out of the jurisdiction in which a suit is pending, may add nothing to the judicial right to take cognizance over the cause, but, nevertheless, it may impart a quality to the resulting judgment that will serve as a credential to it in a foreign jurisdiction. In the case now before this court, the judgment rendered in the court of the state of Illinois is entirely destitute of those properties that entitle it to extraterritorial acceptance: the residence of the defendant to it was known, she was not summoned, she did not appear, and she was not served with process, nor was notice given to her. If this case called for a decision on this ground, I should be quite prepared to say that a judgment so obtained was not obligatory in this state, and that, on the ordinary principles of international law, it had no title to recognition by this court. I am aware that there are adjudications of great authority which are grounded in a different view of this subject. Such cases have been carefully considered by me, but I have not been satisfied with the train of reasoning on which they rest, and I also think they stand opposed to the decided weight of judicial opinion in this country. But I have not deemed it necessary to discuss these decisions in detail, nor shall I pursue this subject further, inasmuch as, in my judgment, the present case does not call for a decision of the precise question embraced in these decisions. The decisions referred to are cases in which a marriage had taken place, and in which the suit had been for the dissolution of such marriage; but such was not the case set up in the proceeding in the court of Illinois.

In that proceeding the existence of the marriage was not admitted. On the contrary, it was, in the most explicit terms, denied. The complainant in that suit did not allege that he was forced to consent to the marriage by duress or from fear; but he asserted, both in his complaint and in his proofs, that he never consented, either by expression or implication. If his complaint and proofs were true, then he was never married in this state; the ceremony was a

nullity; as consent is necessary, he never contracted the matrimonial obligation; therefore, the pretended marriage was not voidable, but was actually void. Accepting the case as made by him, there was, in the language of the ecclesiastical law, a mere jactitation, or boasting that a marriage existed between himself and the respondent. Now, it is obvious that a void marriage could not create a matrimonial status, and the consequence is, the ground upon which the jurisdiction founded on status, which, in some of the decisions, is alleged to exist without notice to the other party, is wanting in this procedure. If the appellant, as he claimed, was not married to the respondent, but she was claiming that he was married, and he wished to put an end to such boastings, such a controversy was a private one between these two parties, and in which society had no interest, and such controversy, it would seem clear, must be settled in the same way as other litigations are put to the test. I cannot see the least ground for asserting that, in such a case as this, the appellant had the right to proceed in a foreign jurisdiction, and procure a judgment, without serving the respondent with process within the jurisdiction in which the suit was brought. On this ground I shall hold that the judgment procured in the court of Illinois is an absolute nullity.

I also agree with the view taken by the vice-chancellor on the second point. I am satisfied that the appellant went to the state of Illinois for the purpose of getting rid of this marriage. His conduct in leaving this state and putting himself under a foreign jurisdiction is to be interpreted by the light of his subsequent conduct. Judged by the proofs made in this cause, the case set up by him in the court of Illinois was a pure fabrication. He knew that it was such. The published notice of the pendency of the suit did not correctly state the name of the respondent. It is the reasonable conclusion, in view of the fact that the entire scheme was a fraud, that this was a contrivance to diminish the risk of the publication which was necessary to give juris-

diction to the tribunal. For this reason, also, I am not willing to give any effect whatever to this foreign judgment.

With respect to the merits of the cause, no question has been made in the argument. The complainant is entitled to the relief prayed for. The decree should be affirmed.

Decree unanimously affirmed.