ANNA FOOTE, respondent,

*v.*

GEORGE FOOTE, defendant; FRANK J. BARTLETTA, appellant.

[Argued October term, 1927. Decided February 6th, 1928.]

1. The purpose of a writ of *ne exeat* is one of restraint to maintain the presence of the defendant within the state, for the purpose of securing the practical application of legal process.

2. Where, upon the issuance of a writ of *ne exeat*, a bond was given to secure the appearance of the defendant, and the defendant did not go out of the jurisdiction of the court during the course of the suit and has not failed to appear when his appearance was demanded, the condition of the bond will not be held to have been breached upon the failure of the defendant to pay maintenance and costs, as well as solicitor's allowance, granted by the court, and an application to forfeit the bond will not be entertained.

· 3. A bond given to secure the appearance of the defendant in a suit in chancery in which a writ of *ne exeat* has been issued, is in' the nature of an equitable bail.

On appeal from the court of chancery.

*Mr. Anthony P. La Porta,* for the appellant.

*Mr. Charles W. Stover,* for the respondent.

The opinion of the court was delivered by

MINTURN, J.

A writ of *ne exeat* was duly issued out of the court of chancery, in a suit for maintenance, upon a bill for that purpose filed in that court. The bond given on the writ by the defendant as principal, and Frank J. Bartletta as surety to the sheriff of Hudson county, was in the statutory form prescribed by chancery rule No. 216, as follows:

"Now, the condition of this obligation is such, that if the said George Foote shall cause his appearance to be entered in the said suit, and continue such appearance by a solicitor of said court of chancery, residing in the State of New Jersey; and shall at all times render himself amenable to the orders and process of said court pending such suit and to such process as shall be issued to compel the performance of the final decree therein, and shall appear before said court, or any officer thereof, when so required by the order of said court, then this obligation to be void; otherwise to remain in full force and virtue."

The court of chancery decreed the payment of $416 annually as maintenance, for the petitioner, as well as the payment by defendant of taxed costs, and a counsel fee to the solicitor of the petitioner. Thereafter an application was made to

forfeit the bond, for non-compliance with the financial directions of the decree, and the learned vice-chancellor so ordered, from which order this appeal was taken. It is conceded that at all times since the bond was executed the defendant has resided within the jurisdiction, and has not failed to appear when his appearance was demanded. His only default consists in his failure to obey the mandate of the decree directing the payment of maintenance and the costs, and solicitor's allowance, and that omission it is insisted comprises a breach of the bond. A bond of this nature, in chancery, has been held to be equivalent in legal import to bail furnished at common law to the sheriff, to insure the appearance of the defendant to answer the suit, and therefore has been generally considered as equitable bail. *Mitchell* v. *Bunch* (*N. Y.*), *2 Paige 696; Brown* v. *Haff, 5 Paige* (*N. Y.*) *235; Greisner* v. *Greisner, 86 N. J. Eq. 76.*

The historical aspect of the writ consists in the fact that it was designed to restrain the subject from departing the realm so that he might be able to respond to the demands of the king, in the event of war, and that conception was afterwards applied by chancery to secure the appearance of a defendant to answer process in civil cases. *19 R. C. L. 134; 2 Bouv. 474.*

The language of the writ itself which was taken from a *fac simile,* under the Roman law, emphasizes this limitation of its use. *Ne exeat Republica, i. e.,* "Let him not go out from the Republic."

The purpose of the writ was therefore one of restraint to maintain the presence of the defendant within the state, for the purpose of securing the practical application of legal process. This construction of the purpose of the writ is supported by many adjudications, in this and other jurisdictions, where the question has been incidentally presented for consideration. *Griswold* v. *Hazard, 141 U. S. 260; Gondas* v. *Gondas, 98 N. J. Eq. 107; Schreiber* v. *Schreiber, 85 N. J. Eq. 303; Penny* v. *Penny, 88 N. J. Eq. 160.*

The language of the bond itself it will be observed connotes such a limitation as its only condition. Thus the word "appear" or its derivative "appearance" occurs three times

through the condition, indicating that its sole purpose was to secure the appearance of the defendant, so that in the language of the condition he "shall at all times render himself amenable to the orders and processes of said court pending such suit."

The Norman French derivative "amenable" (*i. e.*, a willingness to be lead) in this connection must be so construed as to support the general tenor of the bond, as well as to support the historical and the settled procedural reasons which evolved the generation and development of the writ, and controlled its fundamental legal purpose.

No default in appearance admittedly existing upon the part of the defendant, the surety in that respect not being in default, the condition was not breached, and the order of the learned vice-chancellor must therefore be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.