The bill sets up that the complainant for ten years past has engaged in dyeing and dressing furs, and has built up a valuable good will and has and uses a registered trademark, known in the trade, to identify its fur dressing and dyeing, and that it has another trade-mark, not exactly like the registered one, which is also known in the industry and used to identify skins dyed and treated by it. That on August 6th, 1928, it gave the defendant permission to use its trade-marks on marmot (ground hog) skins dyed by the defendant, by this letter: *Page 353 
"NEWARK, N.J., August 6, 1928. A Hollander Son, Inc., Newark, New Jersey.
Gentlemen:
As part of our transaction evidenced by the agreement between us dated August 6, 1928, concerning the equipment in our Green St. plant and the other matters in said agreement provided for, we do hereby agree and consent that you may hereafter use and employ on Marmot skins dyed by you or by any of your subsidiaries the stamp or mark or legend of `Philip A. Singer Bro., Inc.,' or any stamp, mark or legend like the one now used by us or similar thereto.
 Very truly yours, PHILIP A. SINGER BRO., INC. By PHILIP A. SINGER, President."
Claiming that this was a mere license, the complainant revoked it and now prays an injunction because of irreparable harm that will come to its business if the defendant continues to use the trade-marks. It appearing on the face of the bill that the license formed part of an agreement in writing, the complainant was ordered to set forth the whole of the arrangement, under rule 44, and the complainant having complied, annexing a copy of the contract, it now appears that on August 6th, 1928, the Singers sold their fur dressing and dyeing plant on Green street, Newark, to the Hollanders, and agreed to give them their formulas for dressing or dyeing pelts, skins or furs, other than rabbits, and not to engage in that line of business in the United States or Canada until after December 31st, 1933. On their part, the Hollanders agreed to pay the Singers a royalty of two cents for every marmot skin, fur or pelt dyed by them in the meantime, and guaranteed a royalty yield of $40,000. At the end of the period the formulas are to be the property of both. The Hollanders also agreed not to use the name of the complainant in connection with their business. This presents an entirely different picture, and the case in its true light. It comes with ill grace from a suitor appealing to a court of conscience for relief to disclose only half the truth. Suppression of facts material to the issue is neither ingenious *Page 354 
nor ingenuous, and proper discipline would be to deny a hearing.
In the fuller statement of the cause of action, protestingly submitted, the complainant by way of avoiding the force and effect of the contemporaneous letter, alleges that it was not intended to be read as a part of the contract, but only to indicate the transaction out of which the license grew; that it was agreed that the license should continue only so long as the complainant consented; that it was not intended as a part of the contract; that the license was without consideration and finally that to treat the letter as a part of the contract and not a license would be repugnant to defendants' covenant not to use the complainant's name in its business. In short, the effort of the complainant is to deny the natural purport of its own deliberately chosen language.
On this motion all matters well pleaded are to be taken as true, but allegations of the intention of the parties extra the contract, and oral arrangements contra the written undertaking is not approved pleading. The intention of the parties and their agreement must be gathered from what they committed to writing and not from what they say was the understanding or they had in mind or intended should have been written into the contract. As to the plea of no consideration for the license, the facio, utfacias inheres. And there is no conflict between the covenant and the "license." Under one the defendant is not to use the complainant's name in its business promiscuously; under the other, it may brand its finished product of marmot skins with the trade-marks, a proviso, not a repugnance. Chancellor Union LandCo. v. Jaffe, 104 N.J. Law 394.
The letter and the contract manifest the transaction. Read in conjunction, as they must be (13 C.J. 528 and New Jersey cases cited), they express the agreement of the parties, and as unmistakably as plain words can certify, the letter formed an integral part of the contract which inter alia gave the defendant the right to use the trade-marks on the type of skins it was to dye under the formulas, for the use of which it was to pay the royalty.
The bill will be dismissed. *Page 355