This matter is before the court on defendant's motion for an order to discharge the writ of ne exeat issued herein, to cancel a bond given by the defendant thereunder, and to strike the bill of complaint for want of equity. And upon complainant's motion for an order to require the defendant to furnishsufficient bail in the sum of $8,500, that he will not go or attempt to go into parts without the state of New Jersey without leave of the court, the complainant assigning as ground therefor that the bail heretofore given by the defendant *Page 346 
is not sufficient, and having filed a notice of exception thereto. I am not aware of any authority for the filing of a notice of exception to bail given under a writ of ne exeat, nor has any authority therefor been cited by counsel for the complainant. Counsel may have in mind that practice rules applicable to bail given in law proceedings under capias adrespondendum or capias ad satisfaciendum should be regarded as applicable to bail given under a writ of ne exeat. I do not deem it expedient to determine such practice question in the matter sub judice, for the reason that I have concluded that the writ of ne exeat in the instant case should not have been issued, and consequently that the writ should be discharged and the bail given thereunder canceled. The defendant is a son-in-law of the complainant. Owing to marital differences between the defendant and his wife the defendant in the year 1929 saw fit to remove from Brooklyn, New York, to Weehawken, New Jersey. His wife did not accompany him. He established his residence at 989 Boulevard East, Weehawken, New Jersey. That his residence so established was intended to be permanent is manifested not only by his affidavit hereinafter referred to, but also by the fact that on July 20th, 1929, five months before the filing of the bill herein, he entered into a lease for dwelling apartments at said address for a period of three years from September 1st, 1929, wherein he has since resided. The defendant is a physician. He avers that he removed to Weehawken with the purpose and intention to there engage in the practice of medicine. His sincerity in such respect is not only manifested by his affidavit and the lease above mentioned, but also by the fact that in the same month — July, 1929 — he made formal application to the New Jersey state board of medical examiners for a license to practice as a physician within this state, and a license was issued to him by said board thereunder. He has since followed the practice of his profession in Weehawken, New Jersey. He has filed an affidavit herein wherein he says: "I now reside in the town of Weehawken, in the county of Hudson and State of New Jersey. I did not come to the State of New Jersey *Page 347 
for the purpose of evading process of any kind in the State of New York, or for the purpose of avoiding the payment of alimonypendente lite. I came here because it seemed to me the most favorable place where I could practice my profession, in view of the fact that my profession was ruined in Brooklyn owing to the unpleasant notoriety caused by the matrimonial proceedings of my wife against me in the courts of New York. My father-in-law stated to me that he would impoverish me and drive me out of New York and ruin my medical practice in New York, and it would seem as if he succeeded in doing so for, at any rate, I know that my practice was ruined, from whatever cause, and I was compelled to find a field elsewhere to practice my profession and earn my living." Ira Wollison, an attorney and counselor-at-law of New York, by affidavit filed herein says: "I heard Joseph Frieldand, the complainant in this cause, declare that he would drive the defendant out of New York and ruin his professional practice unless the defendant acceded to the complainant's financial demands in connection with the proposed settlement between the defendant and the complainant and the complainant's daughter of all their outstanding and alleged claims against the defendant. The complainant, Joseph Friedland, made the said declaration to me in my office at 150 Broadway, borough of Manhattan, city of New York, sometime about January, 1928." I refer to said affidavits for the purpose of indicating that the defendant's statement that since July, 1929, he has been a bona fide
resident of Weehawken, New Jersey, and his reason for removing thereto, coupled with the fact that he had entered into a lease for dwelling purposes in said municipality, and the fact that he applied for and obtained a license to practice medicine, as hereinabove mentioned, is not only tenable but significant of thebona fides of his purpose and intention in becoming a resident of this state. Much is contained in the affidavits filed herein which is non-evidential and subject to the criticism applied by Chancellor Walker to affidavits filed in Etz v. Weinmann,106 N.J. Eq. 209 (at p. 223) and in Riehl v. Riehl, 101 N.J. Eq. 15
(at p. 26). The *Page 348 
bill of complaint in the case sub judice discloses that the complainant and defendant had engaged in mutual business dealings as a result of which the complainant instituted an action against the defendant in the New York supreme court wherein he obtained a judgment against the defendant, which was entered January 5th, 1929. The defendant urges that the judgment rendered in said New York action is a money judgment and therefore this court is without jurisdiction under the bill of complaint filed herein because the complainant, as judgment creditor, may sue at law thereon in the courts of New Jersey. The complainant's counsel conceded, in argument, that if the New York judgment unconditionally ordered the payment of the sum of money mentioned therein ($7,000, with interest at six per cent. per annum from November 18th, 1927), defendant's point would be well taken, but he urges that the judgment was alternative in character, that it required the defendant to specifically perform an agreement referred to therein within five days after the entry of the judgment or in default thereof to pay to said judgment creditor the aforesaid sum of money. The complainant may sue in our supreme court upon the New York judgment and obtain thereon a judgment for the above-mentioned sum of $7,000, plus interest at six per cent. per annum from November 18th, 1927, upon proof that said judgment has not been satisfied. Generally speaking, the only defenses the defendant can make to a judgment obtained in another state when sued upon here are that the court of our sister state did not have jurisdiction of the person or of the subject-matter; that it was fraudulently procured (Doughty v.Doughty, 28 N.J. Eq. 581), or that the judgment had been satisfied. All defenses existing anterior to the judgment will be regarded as having been conclusively determined in the court where such judgment was obtained. Smith v. Swart,103 N.J. Law 150. In Jardine v. Reichert, 39 N.J. Law 165 (a leading case), it was held that a judgment rendered in another state, when sued on here, can be impeached only on the ground that the adjudging court did not have jurisdiction over the person of the defendant or the subject-matter. Our *Page 349 
Evidence act (2 Comp. Stat. 1910 p. 2225 § 16) provides: "In any suit upon a foreign judgment, or a judgment of any court out of this state, the defendant, or person sought to be affected by such judgment, may show that the defendant therein was not summoned, did not appear, or was not within the jurisdiction of such foreign court, notwithstanding it may be recited in the record of such proceedings that he was summoned or did appear, or was within the jurisdiction of such court; and such recital shall not conclude said defendant, or estop him from proving that the same is not true." The cause of action set out in the complainant's bill must be regarded as merged in the New York judgment, and suit can only be instituted in this state on that judgment. In view thereof the allegations contained in the complainant's bill and in the affidavits filed in complainant's behalf, cannot be considered in this court as grounds for the arrest of the defendant by virtue of a writ of ne exeat in an action on the foreign judgment. Peddie v. Ball, 28 N.J.L.J.21 (at p. 22); Barnes Drake v. Gibbs, 31 N.J. Law 317. A writ of ne exeat may not issue for a debt recoverable at law. The writ applies only to equitable demands; it is in the nature of equitable bail. If the case sub judice was an action for an account as between the complainant and the defendant it might be properly regarded as an equitable demand for which a writ of neexeat might issue. MacDonough v. Gaynor, 18 N.J. Eq. 249.
But such is not the case. The affidavit to obtain a writ of neexeat must show that the defendant is about to leave the state to avoid the jurisdiction of the court. Yule v. Yule, 10 N.J. Eq. 138.
A mere apprehension that defendant is about to leave the state will not warrant the issue of such a writ. In Yule v.Yule, supra, oft-cited by our courts, it was held (at p. 141) that the court should exercise a sound discretion in ordering the writ, that it should not be issued in a doubtful case, that the debt should be certain, and that the defendant's intention of departure beyond the court's jurisdiction should sufficiently appear. In the same case it was also held that the affidavit must be positive as to the defendant's intention to *Page 350 
depart from the state, or to his threats or declarations to that effect, or to facts evincing it, or circumstances amounting to it. In passing, at this point, I deem it advisable to emphasize the opinion which I hold that the threats, declarations, or facts relied upon by the complainant as evincing the defendant's intention to depart from this state to avoid the jurisdiction of the court, must relate to the period of time since the defendant has been within the state, and not, as indicated by affidavits filed in complainant's behalf, to a period a long time prior to the defendant having become a resident of this state. The complainant's proofs do not meet the above mentioned legal requisites. The case sub judice is not analogous to the case ofMacDonough v. Gaynor, supra, wherein Chancellor Zabriskie (atp. 250) mentioned as among certain settled rules of practice in courts of equity as to the writ of ne exeat that such writ will be issued against a non-resident temporarily here, even if not in the state at the time, and that it is not necessary that it should appear that he is about to depart to avoid the jurisdiction, if his departure will defeat the suit. If, as urged by counsel for the complainant, the New York judgment does not evidence a debt certain it would follow as a logical sequence that the writ of ne exeat should not have been issued. And, if there be doubt as to whether the complainant's New York judgment should be regarded as alternative or that a debt certain is established thereby, the writ should not have issued herein, because, as stated in the Yule Case, supra (at p. 141): "It should not be issued in a doubtful case." The claims of the respective parties hereto were determined in the New York action and reduced to a debt of record, which Blackstone declared to be a contract of the highest nature, being established by the sentence of a court of judicature. 2 Bl. Com. 465. See HudsonTrust Co. v. Boyd, 80 N.J. Eq. 267 (at p. 269). In HudsonTrust Co. v. Boyd, supra, Chancellor Walker (at p. 269) declared: "A debt of record is a sum of money which appears to be due by the evidence of a court of record. 2 Words Phrases1891. See, also, New Jersey Insurance Co. v. Meeker,37 N.J. Law (8 Vr.) 282, 301. A judgment debt *Page 351 
is one which is evidenced by matter of record. Bouv. Dict.
(Rawle's Rev.) 513." In Foote v. Foote, 102 N.J. Eq. 291;140 Atl. Rep. 313, Mr. Justice Minturn, writing the opinion for the court of errors and appeals, pointed out the historical aspect of the writ consists in the fact that it was designed to restrain the subject from departing the realm so that he might be able to respond to the demands of the king, in the event of war, and that conception was afterwards applied by chancery to secure the appearance of a defendant to answer process in civil causes, and that the language of the writ itself which was taken from a facsimile, under the Roman law, emphasizes this limitation of its use; that the purpose of the writ was, therefore, one of restraint to maintain the presence of the defendant within the state, for the purpose of securing the practical application of legal process. I conclude in the instant case that the defendant is justified in applying for a discharge of the writ, and for a cancellation of the bond given by him thereunder. In Dithmar v.Dithmar, 68 N.J. Eq. 533, which was upon a motion of the defendant to be discharged from a writ of ne exeat, and for the cancellation of a bond given by him under an order of the court, it was held (at p. 535): "Practice admits application to the court for discharge to be made upon affidavits and before answer, and the court upon such motion may make the discharge upon want of equity appearing in the bill or insufficiency of the affidavits, or any other thing which shows that the writ should not have been granted." In Cary v. Cary, 39 N.J. Eq. 3,
Chancellor Runyon (at p. 4) quoted Lord Eldon, in Hannay v.M'Entire, 11 Ves. Jr. 54: "It [the writ] is a most dreadful weapon by which a malicious man may expose another, who has no intention of doing wrong, to great vexation." In Hoffman'sCh. Pr. 361, 363, cited in Cary v. Cary, supra, it is laid down that when the defendant has given the prescribed security, or is in the custody of the sheriff, he may move to discharge the neexeat, giving the usual notice of a special motion, and that the motion may be made upon a want of equity appearing upon the bill itself, or the insufficiency of the affidavit or allegation as to the *Page 352 
party's going abroad, upon the defendant's answer or upon affidavits. I do not find in complainant's bill, or in any of the affidavits filed in support thereof, any statement upon which may be predicated an intention on the part of the defendant to leave the State of New Jersey, wherein he has resided since the early part of July, 1929. I am of the opinion that the writ of neexeat should not have issued herein; that the defendant at the time of the issue of such writ, and for a considerable period of time prior thereto, was a bona fide resident of this state, residing in the township of Weehawken, where he now resides and is engaged in the practice of his profession; that said defendant has not since establishing his residence in Weehawken, New Jersey, in anywise evinced an intention to remove from without this state. I am also of the opinion that complainant's recourse on his aforesaid New York judgment should be by means of a suit at law.
I will advise an order discharging the writ of ne exeat, requiring the cancellation of the bond given thereunder by the defendant and his surety, requiring the clerk of the court to deliver said bond to the defendant for cancellation, denying the complainant's application to require the defendant to give other bail or security and providing for a dismissal of the bill of complaint for want of equity.