11 N.J. Super. 582 (1951)
78 A.2d 723
HELEN GREENBERG, PLAINTIFF,
v.
MORTIMER GREENBERG, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 7, 1951.
*586 Messrs. Kristeller & Zucker (Mr. Saul J. Zucker appearing), attorneys for the plaintiff.
Messrs. Ruback, Albach & Weisman (Mr. Meyer E. Ruback appearing), attorneys for the defendant Mortimer Greenberg.
STEIN, J.S.C.
Six motions came before me in this cause. One was by the plaintiff, under an order to show cause allowed herein, that the defendant Doctor Greenberg be restrained from removing assets deposited with or under the control of two banking or savings institutions in Newark; another motion by the plaintiff that the temporary receiver appointed herein, to hold assets in this State belonging to Doctor Greenberg, should be continued; and a third motion by the plaintiff that a safe deposit box at the Fidelity Union Trust Co., in the name of Ruth Realty Co., should be sealed or its contents delivered to the said receiver. The defendant Doctor Greenberg countered by motions (a) to dismiss this action on the ground that the plaintiff had brought herself within the unclean hands doctrine by failing to reveal to the court at the time ad interim relief was obtained by her that substantially the same action was already pending between the same parties (husband and wife) in the Supreme Court of New York and that in that earlier action the plaintiff had already obtained an ad interim restraint enjoining the husband from transferring or disposing of assets "no matter where situate;" (b) to abate the within action because of the pendency of the *587 New York action; and (c) to vacate and discharge the writ of ne exeat issued in this cause against the husband. All motions were submitted on affidavits and on arguments, written and oral, furnished by the parties.
The motion to dismiss on the unclean hands doctrine has already been disposed of. It was not denied that when the complaint was filed herein, and on an ex parte application an ad interim restraint was imposed against the defendant, a temporary receiver appointed over his assets in this State, and a writ of ne exeat allowed under which his arrest was ordered, there was not revealed to the court the existence of the New York suit which had already been commenced and in which the defendant had already been served personally in New York. The proofs before me present the complaint in the New York action. In respect of substance the two actions are the same. It was argued before me that the existence of the earlier suit in another state and, particularly, the character of the restraint there already allowed were material facts which the plaintiff, as a suitor in this court, was obliged to reveal. It was emphasized that the omission so to do was not attributable to any ignorance on the part of the plaintiff, who is herself a lawyer in New York, though not engaged in practice. The attorney for the plaintiff in this State assumed the responsibility for the failure to disclose to this court the stated facts but insisted that the omission was not willful and, further, that the disclosure would not have altered the court's action, taken ex parte. I believed that the undisclosed facts were material but I was of the further opinion that their non-disclosure did not in the instant case constitute so serious an omission as to justify the denial to plaintiff of a hearing on the merits of her case. Accordingly, I denied the motion to dismiss. In some jurisdictions one seeking relief is required in his moving papers to state to the court that no like application was previously made to any other court, and, if made, what disposition thereof occurred. The purpose of such requirement is not unlike that of our own rule in matrimonial causes, where the petitioner must reveal all previous proceedings between the parties affecting the marital status. A previous *588 or a pending proceeding between the same parties and for the same or related cause is always material to a subsequent action between those parties, and certainly may be revealing of important attitudes or other facts. Our courts have time and time again indicated their expectation and requirement that suitors in a court of conscience must fully and candidly present the entire situation. In the case of Philip A. Singer & Bro. v. A. Hollander & Son, 104 N.J. Eq. 352, 145 A. 621 (Ch. 1929), Vice-Chancellor Backes said: "Suppression of facts material to the issue is neither ingenious nor ingenuous, and proper discipline would be to deny a hearing." It is to be clearly understood that whenever hereafter relief is sought in this court, particularly when the application is made ex parte and the relief asked is drastic, such as an ad interim restraint or the appointment of a temporary receiver or the issuance of an order for arrest, the applicant shall fully and explicitly reveal to the court all then pending actions between the parties in any way relating to or touching the subject of the controversy.
I next consider the motion to vacate and discharge the order of ne exeat. The defendant-husband's proofs are not controverted with respect to the following facts: He is a physician and was married to the plaintiff in February of 1941. The parties at first resided at Hillside, in this State. That residence was taken up so that Doctor Greenberg could look after the medical practice of his brother-in-law, who had joined our armed forces. The defendant practiced at Hillside from May, 1941, for about a year. His wife was not satisfied with residence at Hillside and wished to move to Brooklyn, where she had spent much of her life, and she wanted her husband to establish himself in Brooklyn as a practicing physician. He yielded to her desires and the couple moved from New Jersey in January of 1942, taking up their residence in Brooklyn, where they lived together without interruption until October 5, 1950. About four months after the parties moved to Brooklyn the doctor discontinued practicing at Hillside and at once opened, in May of 1942, a medical office in Brooklyn, where he has practiced continuously to the present time. *589 He has not for about nine years practiced anywhere in New Jersey. His practice is an extensive one and embraces considerable work in the field of obstetrics. He is required to hold himself available at all hours of the night for patients in delivery and other patients approaching such event. He admits that he has been financially successful, and if that success is to be measured by the wife's statements of his wealth, he has become a person of large and substantial means. Obviously his interests require that he continue to practice where he has over the years built up a large following and enjoys a lucrative practice. It is exceedingly unlikely that against self-interest he would wish to depart to another state to start from scratch and endeavor to build up an entirely new following.
The wife asserts in her affidavit verifying the complaint that he made the threat that when he would obtain the delivery of the Cadillac automobile which he has on order he will depart for California, to reside there permanently. Forgetful of this assertion she stated in a later affidavit that he became a resident of New Jersey because of his infatuation with a certain lady residing in New Jersey, his purpose in moving to New Jersey being not only to be near her but to reside in this State, where a divorce is obtainable on grounds not cognizable in the State of New York. She is evidently mindful of the grounds of desertion and cruelty, traces of which may be found in the husband's charge that she mistreated him and that on October 5, 1950, she changed the locks of their Brooklyn home, barred him therefrom, and even prevented him from removing therefrom his clothes and personal belongings. The charge of having locked out her husband is denied by her and there is no need for determining now that disputed fact. We are here concerned with the simple question of the propriety of the issuance of the writ of ne exeat. In her application for that writ, the wife stated that her husband was then, on December 11, 1950, living with his parents at Hillside, New Jersey. In her most recent affidavit, sworn to on January 8, 1951, she says: "I have charged that my husband, the defendant, Mortimer Greenberg herein, *590 was a resident of New Jersey when this suit was started." The within action was in fact started upon the filing of the complaint on December 11, 1950. The allegations which moved the court to allow the writ of ne exeat were those that he was a resident of this State and was about to depart therefrom to California. In support of those claims she offers proof which, in the form offered, is inadmissible because it is clearly founded on hearsay. Assuming that such proof were free of that objection, it amounts to the following: He was on or about September 12, 1950, one of the incorporators of a company in New Jersey known as Ruth Realty Co. It is not denied that he was named in the certificate of incorporation as the registered agent and the address of the company's office was given as that of the parents' home in Hillside, New Jersey, and that one or more safety boxes were opened in this State in the name of that company, with the defendant designated as president and access furnished to him. The attorney who prepared the charter explains in his affidavit that he was engaged to incorporate the company by a Mrs. Orris (another of the three incorporators and the sister of the defendant), that in designating the registered agent he, the attorney, had committed an error, and that he had known for some time that the defendant lived in Brooklyn and practiced medicine there. The attorney explains in his affidavit that he had intended to designate Jacob Greenberg (the third incorporator and the defendant's father) as the registered agent, but through error and because of similarity of surnames the name Mortimer Greenberg was inserted instead of that of the father, Jacob Greenberg. He further says that it was he who chose the name of the registered agent. The other two incorporators say that when they signed the certificate of incorporation they did not notice who had been designated as the registered agent. From the fact of such designation and from the further fact that on the application for a safety box the defendant's address was stated as that of his parents, the plaintiff concludes that the defendant changed his residence from Brooklyn to that of Hillside, New Jersey. This conclusion cannot prevail against the very persuasive circumstances that *591 the defendant has not only lived continuously in Brooklyn for almost nine years but that his professional interests require the continuance of such residence. It is the defendant himself who in his answering affidavit volunteers the information that when he was locked out from his home in Brooklyn he came to Hillside two or three nights a week to sleep at his parents' home, and that on all other nights he slept in his Brooklyn office so as to be available for the night calls in his obstretrical work. It is not denied that he did this only while looking around in Brooklyn and Manhattan for suitable accommodations for himself, which he found early in December in New York City, where he has lived ever since. It is not denied that the last night he slept at his parents' home was Saturday, December 2, 1950, and that he has not been in New Jersey since the morning of Sunday, December 3, 1950. As to his state of mind in coming to New Jersey two or three nights a week during the alleged period of lockout, he asserts, and the court believes him, that at no time during that period did he intend to change his residence from Brooklyn to Hillside, New Jersey. I also believe the attorney, Mr. Castelbaum, that his designation of the defendant as the registered agent and that of the residence of the defendant's father as the registered office resulted from an error on the part of counsel and that what was intended was to designate the father and the father's home respectively, as agent and office. Even if this were not so, the mere designation of the defendant as registered agent would not accomplish the change of residence which the plaintiff alleged and upon which she obtained the order for the defendant's arrest. The defendant's own use of the Hillside address in connection with the renting of a box does not by itself make out the plaintiff's claim that her husband became a resident of New Jersey. All the circumstances indicate plainly that his coming into the State between October 5, 1950, and December 2, 1950, to sleep two or three nights a week in his parents' home, was a temporary make-shift arrangement to tide him over until he could find suitable residence in New York. The fact that he slept in his Brooklyn office four or five nights a week more than just *592 outweighs the fact that other nights he slept at Hillside. A very important circumstance on this question of residence is the fact of the defendant's well-established medical practice in Brooklyn. Of like significance is the fact that in that community he has served and continues to serve on the medical staff of three Brooklyn hospitals but has no such connection anywhere in this State.
A somewhat similar problem was considered by this court in the case of Friedland v. Isquith, 106 N.J. Eq. 344 (Ch. 1930). There the defendant moved to discharge a writ of ne exeat. The defendant was the complainant's son-in-law. He was a doctor and until 1929 lived in Brooklyn, where he practiced medicine. Due to marital difficulties between himself and his wife, he moved in 1929 from Brooklyn to Weehawken, New Jersey. The wife did not accompany him. The question before the court was whether in coming to New Jersey and opening an office to practice medicine he had established a bona fide residence here, or whether coming to New Jersey was for the purpose of evading process in the State of New York and for the further purpose of avoiding the payment there of alimony, pendente lite. The court held that he was a bona fide resident of this State not only because that was the stated intention of the defendant but also because he sought and obtained a license to practice medicine in this State. The same reasoning which led the court in the cited case to find the defendant a bona fide resident of New Jersey leads me to find that at the time the writ of ne exeat issued in this cause the defendant was, and for many years had been and still is, a bona fide resident of the State of New York, and was not, as is claimed by the plaintiff, a resident of New Jersey. The alleged change of the defendant's residence from New York to New Jersey is not supported by any proof of such clarity and persuasiveness as to overcome the powerfully strong reasons which anchor the defendant's interests in Brooklyn and make his suggested departure therefrom highly incredible. The wife's affidavit asserting a change of residence is unsupported by any other witness and her self-contradiction seriously impairs the value of her assertion. Initially her *593 claim was that her hubsand's intentions pointed to the State of California, to which he intended to move and wherein he intended to live. In her later affidavit herein she attributed an entirely different purpose to her husband. Latterly she charged that he came to New Jersey to be near a named woman and suggested that this was for the reason that grounds for divorce were available to him here which were not cognizable in New York. By that statement she revealed a certain acquaintance with our law and she must be held to have known that the maintenance by the husband of a suit in this State required a bona fide residence here of two years. Such alleged purpose rules out the alleged intention to depart for California in the near future or as soon as the defendant obtains delivery of a Cadillac automobile. The two allegations clash violently with one another and indicate that the wife is stirred by what are mere apprehensions, not sufficient to warrant the issuance of a writ of ne exeat. Friedland v. Isquith, supra. On the state of the proofs and in the present posture of the case I am convinced that when the writ of ne exeat was applied for, the defendant was a bona fide resident of New York and had no intention of becoming a resident either of this State or of the State of California.
Plaintiff's attorney insists, however, that the writ may issue even against a non-resident, and he relies on the case of MacDonough v. Gaynor, 18 N.J. Eq. 249 (Ch. 1867), where it was held that the writ "will be issued against a non-resident temporarily here, even if not in the state at the time." If to the language quoted is sought to be given the meaning that a non-resident merely passing through this State or here on a visit of a day or so may be arrested at the suit of a non-resident (herself residing permanently where the defendant resides permanently), I should decline to follow such construction. I do not give to that early case the authority of such a holding. I incline to the view that what is meant by the quoted language is that where one establishes a temporary residence in this State he is amenable to the writ even though on the particular day of issuance he be out of the State. An example of that would be where a non-resident lives at the Jersey shore *594 during the summer season but has his permanent home outside this State. The writ could issue against him during his customary summer residence in this State, even though on the date of issuance he were outside the State. That, however, is not the situation here. If the fact that the defendant slept at his father's home in this State two or three nights a week might be said to constitute a "temporary residence," the fact is undisputed that that "temporary residence" terminated the morning of December 3, 1950, since which time the defendant has resided in his newly-found apartment in New York City. To say the very least, the facts relied on by the wife are attended with doubts, and the rule is settled that in a doubtful case the writ should not issue. Friedland v. Isquith, supra.
Nor do I see how in the present posture of the case the plaintiff's cause could be defeated if in fact the husband departed from Brooklyn with either of the intentions attributed to him by the plaintiff. If he came into New Jersey in order to avail himself of desertion as a ground for divorce, then, surely, his intended residence here for two years is to be reasonably assumed and he would be here subject to our processes. As was said in Foote v. Foote, 102 N.J. Eq. 291 (E. & A. 1927), the purpose of the writ is "to maintain the presence of the defendant within the state, for the purpose of securing the practical application of legal process." If, on the other hand, the defendant did go to California, his departure would not defeat the plaintiff's cause, for both in New York and in this court security is furnished her, of which I shall hereafter speak.
Plaintiff's counsel has made the point that the motion to vacate the writ of ne exeat should not be entertained until the defendant has first submitted to arrest and has put up a bond to secure his appearance in this State. It is well settled that the defendant may at any time exhibit to the court anything which shows that the writ should not have been granted and any reason for its discharge, and that affidavits may be read both in support of and against the motion to discharge the writ. See Cary v. Cary, 39 N.J. Eq. 3 (Ch. 1884), and cases there cited; also 2 Dan. Ch. Pr. 1712. A *595 different rule would, as is pointed out in the last cited case, work to the great prejudice of the defendant, for the rule would "put it out of his power to seek relief for a long period of time, and so give to the complainant a great and unjust advantage, and ought not to exist." The requirement that a defendant must first submit to arrest before he can challenge the validity of a writ of ne exeat would be a monstrous rule. The writ might be founded on a non-existent cause or be based upon false allegations of intended departure from the court's jurisdiction, and yet before these facts could be shown the indignity of incarceration would have to be suffered. Such outrage would be aggravated in cases where the defendants have not the means to post the security fixed in the order for the writ. I therefore hold that a defendant against whom the writ of ne exeat is directed may at any time, and without submission to arrest and without posting security, challenge the validity or propriety of the writ.
One other reason should be mentioned why the writ here should be vacated. The writ issues only from the necessities of a given case and to prevent a failure of justice. Palmer v. Palmer, 84 N.J. Eq. 550 (Ch. 1915, opinion by Chancellor Walker). In view of the relief which has been awarded the plaintiff by the New York courts in her like action against her husband, and in view of the relief which is hereinbelow awarded, substantial justice is being done to the plaintiff and there is no reason or need to hamstring the defendant with the writ and its dire consequences. The arrest of the defendant, who is a practicing physician, might well impair, if not destroy, his professional standing, bringing with it an impairment of his ability to respond financially to such money decree as may finally be awarded to the plaintiff by the courts of New York, in which she is maintaining and prosecuting her major effort.
For the reasons stated the order for the writ of ne exeat and the writ are vacated and set aside.
Defendant moves to abate the within action because of the pendency of the New York action. Both actions are between the same parties and are substantially alike. That *596 motion must be denied. It is settled law in this State that the pendency of another action, either at law or in equity, in another state is no bar to the prosecution of a like action in this State between the same parties. The rule is laid down that where such actions are brought "the defendant who is harassed by successive suits in different jurisdictions may apply to the court in which the subsequent suit is brought for relief, and the court may, in its discretion, stay proceedings, or refuse to permit final judgment until the prior suit has been determined." Mumford v. Ecuador Development Co., 50 A. 476 (Ch. 1901, not officially reported); Fulton v. Golden, 25 N.J. Eq. 353 (Ch. 1874); Kerr v. Willetts, 48 N.J.L. 78 (Sup. Ct. 1886); Fairchild v. Fairchild, 53 N.J. Eq. 678 (E. & A. 1895); Mennonna v. Penna. R.R. Co., 5 N.J. Misc. 233 (Sup. Ct. 1927).
It will be ordered that when the defendant shall have filed a general appearance herein, as below directed, this cause will be stayed to abide the finality of the New York action between these parties.
This court, on ex parte application, appointed a temporary receiver over the defendant's assets in this State, imposed a restraint against removal of assets, and directed that the defendant show cause why the receiver should not be continued, why a safe deposit box or boxes should not either be sealed or its contents delivered to the receiver, and why the ad interim restraint should not be continued. Since these things were done the New York Supreme Court heard the New York action, in which the wife asserts the same facts, makes the same claims, and seeks the same money award. In the New York action the court has jurisdiction over both subject-matter and person, since the defendant was served personally within that state. The defendant appeared in that action and litigated the relief sought, pendente lite. The contest resulted in an order entered on January 9, 1951. That order is, by consent of both counsel, part of the record before me. By that order it is directed that the defendant post a bond in the penal sum of $25,000, "conditioned for performance of, compliance with and satisfaction of, any judgment *597 that may be rendered in this action." By "this action" is meant, of course, the New York action. The same order provides that the defendant may, in lieu of furnishing such bond, deposit with the Clerk of the New York Supreme Court, for safe keeping and subject to the further order of that court, "any or all of the items referred to in subdivisions (b), (c) and (d) of paragraph I hereof, and in the event he does so, the amount of the undertaking shall be reduced, by the amount specified in such subdivisions, with respect to the item in question so deposited." Item (b) is described in that order as a $20,000 note executed by Marshall Zirinsky and endorsed by Louis Zirinsky, dated on or about December 5, 1949. Item (c) is identified as consisting of $7,400 face value bonds. Item (d) is identified as $19,112.50, the proceeds of a check given by the plaintiff to the defendant on September 14, 1950. It is further provided in the order that in the event the defendant fails to post the bond or fails to deposit with the clerk of the court such securities amounting to $25,000, an application may be made, on notice, for the appointment of a receiver of the defendant's assets. This court is advised that the bond in New York has not been furnished, but that the defendant is ready to post items (b) and (c), amounting to $27,400, but is unable to do so because those items are in a safe deposit box in this State and are subject to the control of the receiver appointed in this action. I regard the New York order as constituting an acceptable admeasurement of the amount of security to which the plaintiff is entitled in respect of her entire money and property demands being the same demands made in this State), and that the fixation of $25,000 security made by the New York court reflects its appraisal of the plaintiff's chances of recovery. It would be unjust to exact from the defendant double security for the identical claims. In fact, the exaction of security under the New York order might well have justified the denial of any relief, pendente lite, in this State. In Mumford v. Ecuador Development Co., supra, the fact that the complainants had exacted in the Federal Court of New York a $50,000 bond as "partial security for any judgment that the said complainants *598 might be able to recover in said action" was deemed a sufficient ground for the denial in this State of a preliminary injunction. Whether what the defendant furnishes in New York is a surety bond or the deposit of securities as directed, or a receiver is appointed over his assets, any such eventuality would make it unnecessary and quite unjust to impose additional security burdens on the defendant. It will therefore be ordered that (a) the receiver herein appointed deliver to the Clerk of the New York Supreme Court items (b) and (c) above mentioned, being the promissory note for $20,000 and bonds of the face value of $7,400, such delivery to be against the receipt of said clerk; (b) the residue of the assets subject to the receiver's control in this State be surrendered and delivered to the defendant's attorneys herein; and (c) the receiver be discharged and his bond cancelled, but only upon payment to him of his reasonable charges and expenses to be approved by this court, the same to be paid in the first instance by the defendant, the ultimate liability therefor to abide the further order of this court. In the event security items (b) and (c) aforementioned are not accepted by the Clerk of the New York Supreme Court, or in the event that before their delivery is tendered the defendant will have posted in that court a surety bond, or if a receiver of his assets will have been appointed by the New York court, then said promissory note and bonds shall be retained by the receiver appointed in the within action and shall be disposed of as this court shall by order direct.
By Rule 3:12-2 special appearances are done away with in this State. However, a question may arise concerning the character of the defendant's appearance in this action on the several motions above mentioned and in response to the outstanding orders to show cause. It may well be that if the stay of this action is for any reason lifted in the future, the defendant may make the point that his appearance herein was for limited purpose and did not constitute a general appearance. This he must not be allowed to do and should be placed in a position where, if the stay be lifted and this cause be proceeded with in the future, he shall be obliged to answer *599 as though he had been served with process in this State. The order or orders to be entered on the above conclusions will be conditioned upon the defendant first entering in the within action his general appearance. Upon such appearance being filed, the prosecution of this action will be stayed until the further order of the court.
Present order.